USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __April 25, 2014__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :

DARRELL WASHINGTON,                :

                                      :

                         Plaintiff,    :        13 Civ. 5322 (KPF)

                                        :

                   v.                :        OPINION AND ORDER

                                        :

WESTCHESTER COUNTY DEPT. OF   :

CORRECTION, *et al.*,              :

                                        :

                         Defendants.  :

                                        :

------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge[1]:

      In early 2013, Plaintiff Darrell Washington, who is proceeding *pro se* and is currently incarcerated, received medical treatment for a severe bacterial infection he experienced while incarcerated at the Westchester County Jail.  On July 29, 2013, Plaintiff initiated this action under 42 U.S.C. § 1983 against Defendants Westchester County Department of Correction and Correct Care Solutions, LLC, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment.  Defendants now move to dismiss the Complaint for failure to state a claim.  For the reasons discussed herein, that motion is granted in part, and Plaintiff is granted leave to file an amended complaint within 30 days.

---

[1]     Doug Giannantonio, a third-year student at Columbia Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

## BACKGROUND[2]

### A.    Plaintiff's Incarceration and MRSA Infection

Plaintiff was arrested on or about January 23, 2013.  (Compl. 3).  Prior to

his arrest, Plaintiff had been prescribed a medication called Doxycycline, as

well as an ointment, "for MRSA."  (*Id.*).[3]  Accordingly, at the time Plaintiff was

arrested, he had on his person both the Doxycycline and "some type of

ointment."  (*Id.*).  Plaintiff does not actually allege that he had a MRSA infection

prior to his incarceration, or that he suffered any symptoms of that infection,

only that he had been prescribed and was taking medication "for MRSA."  (*Id.*).[4]

---

[2]    The facts alleged herein are drawn from Plaintiff's Complaint ("Compl." (Dkt. #2)), and are assumed true for the purposes of this Opinion.  For convenience, Defendants' opening brief in support of the instant motion (Dkt. #15) will be referred to as "Def. Br."; Plaintiff's opposition affirmation (Dkt. #23) as "Pl. Opp."; and Defendants' reply brief (Dkt. #24) as "Def. Reply."

Prior to the filing of Defendants' motion to dismiss, Plaintiff submitted to the Court what he alleges to be the relevant medical records.  (Dkt. #9, 10).  However, those materials were not submitted along with the Complaint; they were not referred to in the Complaint; and they were not submitted in connection with the briefing of this motion.  Accordingly, the Court may not consider these documents in the context of a motion to dismiss.  *See generally Kalyanaram* v. *American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (discussing circumstances under which courts can consider outside materials in resolving motions to dismiss).  Yet to the extent the Court is permitted to review all papers submitted by a *pro se* plaintiff in order to raise the strongest arguments those papers suggest, the Court has reviewed these records, and notes that they facially support the factual allegations discussed herein.

[3]    MRSA is an acronym for Methicillin-resistant Staphylococcus aureus, a bacterium that can cause serious infections.

[4]    Plaintiff alleges in opposition that he "did not enter the facility with the deadly disease," and that he "caught" MRSA while at the Jail.  (Pl. Opp. 1-3).  This statement is facially contradictory with Plaintiff's allegation in the Complaint that he was undergoing treatment for MRSA prior to his incarceration.  The Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss unless they are consistent with those contained in the complaint.  *See Friedl* v. *City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).  This is not the case here, and for this reason, the Court disregards the inconsistent factual allegations in Plaintiff's opposition papers.

During the relevant time period, Plaintiff was incarcerated at the Westchester County Jail (the "Jail"), in Valhalla, New York.  (Compl. 3).  The Jail is operated by Defendant Westchester County Department of Correction (the "County").  Defendant Correct Care Solutions, LLC ("Correct Care") provides medical care to prisoners at the Jail.

According to Plaintiff, upon his arrival at the Jail on January 23, 2013, Plaintiff informed a correctional officer and a doctor on staff that Plaintiff was on medication for MRSA.  (Compl. 3).  The doctor informed Plaintiff that he could no longer take his prescribed medications, but that Plaintiff would be prescribed new medication.  (*Id.*).  In fact, Plaintiff was never prescribed any new medication, and the Doxycycline and ointment were locked up with Plaintiff's property at the Jail.  (*Id.*).

On or about March 17, 2013, Plaintiff developed a large lump on his leg. (Compl. 3).  The lump worsened and "turned into a 2 inch hole."  (*Id.*). Plaintiff's leg was "[highly] infected," and he "was in a lot of pain."  (*Id.*).  In response to Plaintiff's complaint, a doctor performed a blood test, measured the size of the lump, and placed Plaintiff in quarantine for approximately one week. (*Id.*).

The diagnostic test results subsequently revealed that Plaintiff was infected with MRSA.  (Compl. 3).  Accordingly, a doctor prescribed antibiotics and painkillers to Plaintiff, which he took for approximately three weeks.  (*Id.*). Plaintiff does not take issue with his medical treatment in connection with his

3

March 2013 infection, but avers that he "feel[s] the doctors [at the Jail] are hiding something." (*Id.*).

Plaintiff alleges that his medical issues are ongoing due to "the medication/MRSA." (Compl. 5). Perhaps relatedly, Plaintiff contends that on or about June 14, 2013, he developed "a very bad rash" on his arm. (*Id.* at 3). It is unclear, however, whether this "bad rash" is related in any way to Plaintiff's MRSA infection; Plaintiff does not provide any further details about this rash or its treatment.

**B.     The Instant Action**

On June 19, 2013, Plaintiff served a Notice of Claim, dated June 14, 2013, on the Westchester County Attorney, indicating that Plaintiff planned to pursue a claim against the County and Correct Care under Section 50-e of the New York General Municipal Law. (Def. Br. 3; Dkt. #18-1 at 2-3). The Westchester County Attorney subsequently rejected Plaintiff's Notice of Claim as untimely. (Def. Br. 3; Dkt. #18-1 at 1, 4).

On July 29, 2013, Plaintiff initiated the instant action against Defendants (Dkt. #2), seeking $1 million in damages to "pay for any further medical bills and also for pain and suffering." (Compl. 5). The allegations contained in Plaintiff's Complaint mirror those in his previously-filed Notice of Claim. (Def. Br. 3; *compare* Compl. 3, *with* Dkt. #18-1 at 2).

To date, Plaintiff concededly has not filed a grievance with the Jail — or with any other jail, prison, or correctional facility — for improper medical

treatment in relation to the events described in the Complaint.  (Compl. 4).
Instead, Plaintiff contends that he does not know whether the Jail has a
grievance procedure and "do[es]n[']t know how to file a grievance."  (Compl. 4).

The case was assigned to the undersigned on August 6, 2013.  Pursuant
to the briefing schedule set forth at the October 23, 2013 pre-motion
conference (Dkt. #11), Defendants moved to dismiss on November 22, 2013
(Dkt. #13).  Plaintiff filed his opposition on December 17, 2013 (Dkt. #23), and
the motion was fully briefed as of the filing of Defendants' reply on December
24, 2013 (Dkt. #24).  The Court now considers Defendants' motion to dismiss.

## DISCUSSION

### A.   Applicable Law

When considering a motion under Rule 12(b)(6), the Court should "draw
all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual
allegations to be true, and determine whether they plausibly give rise to an
entitlement to relief."  Fed. R. Civ. P. 12(b)(6); *Faber* v. *Metropolitan Life*, 648
F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan*
v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to
relief if he alleges "enough facts to state a claim to relief that is plausible on its
face."  *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re
Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does
not require heightened fact pleading of specifics, it does require enough facts to
nudge [plaintiff's] claims across the line from conceivable to plausible."

(internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  That said, the liberal pleading standard accorded to *pro se* litigants "is not without limits, and all normal rules of pleading are not absolutely suspended."  *Stinson* v. *Sheriff's Department*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

## B.    Analysis

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants acted with deliberate indifference to his serious medical needs.  He brings this claim under Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  Plaintiff's claim is best understood as a claim for two separate instances of alleged deliberate indifference to serious medical need: first, Defendants' decision to discontinue

6

Plaintiff's medications upon his admission into the Jail, and second, Defendants' treatment of Plaintiff's leg infection in March 2013.

### 1. Defendant County's Affirmative Defense of Exhaustion Is Denied Without Prejudice

Preliminarily, the County raises, as an affirmative defense, Plaintiff's failure to exhaust his administrative remedies, in violation of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, Title VIII, § 803(d), 110 Stat. 1321-71 (1996) (codified as amended at 42 U.S.C. § 1997e). The PLRA requires prisoners to exhaust all "available" administrative remedies prior to filing a claim in federal court. Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter* v. *Nussle*, 534 U.S. 516, 532 (2002) (internal citation omitted); *see also Cruz* v. *Jordan*, 80 F. Supp. 2d 109, 111 (S.D.N.Y. 1999) ("I hold that an action alleging deliberate indifference to medical needs is an action 'brought with respect to prison conditions,' requiring exhaustion[.]").

The purpose of the exhaustion requirement is to promote efficiency by reducing the quantity and improving the quality of prisoner litigation. *Porter,*

7

534 U.S. at 516; *see also Woodford* v. *Ngo*, 548 U.S. 81, 89 (2006) ("Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." (internal citation omitted)). Further, "[e]xhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford*, 548 U.S. at 89 (internal citation omitted).

The Second Circuit has held that there are three exceptions to the PLRA's "mandatory" exhaustion requirement:

> [W]hen (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero* v. *Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill* v. *New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In light of this case law, Plaintiff's admitted failure to exhaust his administrative remedies is not dispositive. (*See* Compl. 4). Instead, the Court must determine whether, as relevant here, those administrative remedies were available to Plaintiff in the first place. Plaintiff contends that he did not know how to file a grievance. (*Id.*). Courts within this District are uniform in holding that "[administrative] remedies are not available where prisoners are not informed of their existence." *Smith* v. *City of New York*, No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *8 (S.D.N.Y. Sept. 26, 2013) (internal citation omitted);

*see also Rivera* v. *New York City*, No. 12 Civ. 760 (DLC), 2013 WL 6061759, at
\*4-5 (S.D.N.Y. Nov. 18, 2013) (same).

Specifically, "[a]n institution keeps an inmate ignorant of the grievance
procedure [and thus administrative remedies are 'unavailable'] when
correctional officials either fail to inform him of the procedure altogether or fail
to provide him with access to materials which could otherwise educate him
about the use of that process." *Arnold* v. *Goetz*, 245 F. Supp. 2d 527, 538
(S.D.N.Y. 2003) (internal citation omitted).  At the same time, however,
"'correctional officials are entitled to the benefit of § 1997e(a) as long as the
institution has made a reasonable, good faith effort to make the grievance
procedure available to inmates; an inmate may not close his eyes to what he
reasonably should have known.'" *Id.* at 537-38 (internal citation omitted).  The
availability of those remedies is adjudged not by whether the Plaintiff was
unaware of them, but instead by whether "'a similarly situated individual of
ordinary firmness'" would have deemed them available.  *Hemphill* v. *New York*,
380 F.3d 680, 688 (2d Cir. 2004) (internal citation omitted).  This is a question
of fact.  *Arnold*, 245 F. Supp. 2d at 538.

The record here is devoid of any facts from which such a determination
could be made.  Most cases in this District considering the topic have explored,
in detail, whether the correctional officers provided the inmate with a
handbook explaining the grievance procedure, and whether officers explained
the grievance procedure prior to the alleged incident; the record before the

Court is — understandably, at this procedural juncture — silent as to this information. *See, e.g.*, *Smith*, 2013 WL 5434144, at *10 ("Receipt of such a handbook generally indicates that the inmates were informed of the grievance procedure so as to make that procedure 'available' to them. It alone is not, however, dispositive." (internal citation omitted)); *Arnold*, 245 F. Supp. 2d at 539 ("The defendants allege that the 'behavior booklet' provided to an inmate upon his 'entrance to the corrections system' outlines the available grievance procedures." (internal citation omitted)).

Failure to comply with the PLRA's exhaustion requirement is an affirmative defense, on which the defendant bears the burden of proof. *Jenkins* v. *Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999); *Hallett* v. *New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000). The County has failed to carry its burden on this affirmative defense; however, its claim in this regard is denied without prejudice to raising such a defense at a later date, upon a more complete record.[5] *See Arnold*, 245 F. Supp. 2d at 538-39 ("Since the non-moving party is proceeding *pro se*, we are obligated to resolve existing doubts in the plaintiff's favor and to read his [] Complaint as raising the strongest argument it suggests (namely, that his lack of sufficient knowledge about the procedure is attributable to correctional officials rather than to himself).

---

[5]     Though the Court does not reach this issue here, it notes that Defendant Correct Care has not also raised the affirmative defense of Plaintiff's failure to comply with the PLRA's exhaustion requirement and, for that reason, may have forfeited this defense. *See Arnold*, 245 F. Supp. 2d at 532 (noting that failure to exhaust is an affirmative defense and thus "'may be waived by a defendant, or forfeited by failure to raise the defense'" (internal citation omitted)).

Giving the plaintiff the benefit of the doubt in this manner despite his failure to clarify his statements comports with the principle that the defendants bear the burden of proving that he failed to satisfy the PLRA's exhaustion requirement.").

### 2.   The Complaint Fails to Allege Defendants' Deliberate Indifference to a Serious Medical Need

The Court next turns to the merits of Plaintiff's constitutional claim.  To sufficiently plead a violation of the Eighth Amendment for deliberate indifference to a serious medical need, a plaintiff must allege that (i) the alleged deprivation results in a serious medical condition; and (ii) the defendant, in depriving plaintiff of medical treatment, acted with deliberate indifference. *Caiozzo* v. *Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

### a.   Plaintiff Has Alleged a Serious Medical Condition

A serious medical condition requires the existence of "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal citation omitted); *see also Jones* v. *Vives*, 523 F. App'x 48, 49 (2d Cir. 2013) (summary order).

Defendants do not dispute that MRSA constitutes a serious medical condition that may produce death, degeneration, or extreme pain.  (Def. Br. 7). *See generally Gaines* v. *Armor Health Care, Inc.*, No. 12 Civ. 5663 (JS) (WDW), 2013 WL 6410311, at *5 (E.D.N.Y. Dec. 9, 2013) (noting that MRSA was a sufficiently serious medical condition); *McNulty* v. *Yaneka*, No. 11 Civ. 8320

(ER), 2013 WL 684448, at *7 n.2 (S.D.N.Y. Feb. 25, 2013) (same).  Accordingly, Plaintiff has satisfied the first element of his Eighth Amendment claim.

### b.   Plaintiff Has Failed to Allege that Defendants Acted with the Requisite Deliberate Indifference

#### i.   Applicable Law

Plaintiff must also allege, however, that Defendants acted with "a sufficiently culpable state of mind," equivalent to criminal recklessness. *Hathaway*, 99 F.3d at 553 (internal citation omitted); *see also Cole* v. *Fischer*, 416 F. App'x 111, 113 (2d Cir. 2011) (summary order).  Such a state of mind "'entails something more than mere negligence[, but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *Hathaway*, 99 F.3d at 553 (quoting *Farmer* v. *Brennan,* 511 U.S. 825, 835 (1994)).

Mere allegations of medical malpractice are generally insufficient to state a claim of deliberate indifference to a serious medical need.  *Estelle* v. *Gamble*, 429 U.S. 97, 105-06 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Rather, "'the charged official must act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result.'"  *Bell* v. *Jendell*, No. 12 Civ. 6666 (KMK), 2013 WL 5863561, at *4 (S.D.N.Y. Oct. 31, 2013) (quoting *Salahuddin*, 467 F.3d at 280) (emphasis in *Bell*); *see also Farmer*, 511 U.S. at

12

837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Similarly, "not every lapse in medical care is a constitutional wrong." *Salahuddin*, 467 F.3d at 279 (internal citation omitted).  A constitutional wrong requires deliberate indifference, and it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.  *See Ross* v. *Correct Care Solutions LLC*, No. 11 Civ. 8542 (DLC), 2013 WL 5018838, at *4 (S.D.N.Y. Sept. 13, 2013) ("'[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.'" (internal citation omitted)). Lastly, the law is clear that the medication a doctor selects to treat the patient's conditions is a medical judgment and does not rise to the level of deliberate indifference.  *Thomas* v. *Westchester Cnty.*, No. 12 Civ. 6718 (CS), 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013) ("treating pain with over-the-counter, as opposed to prescription, medication is a disagreement over treatment that does not rise to the level of deliberate indifference" (internal citation omitted)); *see also Hill* v. *Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." (internal citation omitted)).

### ii.      The January 2013 Suspension of Medication

Plaintiff's first claim of deliberate indifference stems from his allegation that he had been prescribed medication for MRSA at the time of his arrest, but that Defendants discontinued those medications and failed to prescribe him new ones, despite their promise to do so.  (Compl. 3).  Plaintiff does not allege that he was suffering from any symptoms of a MRSA infection at the time, nor that he had actually been diagnosed as having MRSA (as opposed to being prescribed medications for the condition, perhaps prophylactically).  However, within weeks of Defendants' decision to cease Plaintiff's medication and failure to prescribe new medication, Plaintiff developed a large lump that resulted from a MRSA infection.  Accordingly, Plaintiff contends that he should have been prescribed new medication for treatment of MRSA long before the March 17 incident.

Delay in providing medication can rise to the level of deliberate indifference, but only where a plaintiff's allegations indicate that the defendants, for instance, "deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for [a period of time], or delayed major surgery for over two years." *Demata* v. *New York State Correctional Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted); *cf. Ross*, 2013 WL 5018838, at *5 (denying motion to dismiss a deliberate-indifference claim where defendant "was informed about [the plaintiff's] sleep apnea" but "*deliberately refused* to provide him with

14

medical treatment ... on account of his prior complaint and lawsuits"
(emphasis added)).

Plaintiff fails to allege any facts demonstrating that Defendants
deliberately withheld his medication as a form of punishment, or discontinued
his medication while being aware that serious, life-threatening consequences
could result therefrom.  Instead, Plaintiff's allegations indicate that Defendants
agreed to prescribe him new medication, but simply failed to do so; this is
insufficient to state a claim for deliberate indifference.  *See Ferguson* v. *Cai*, No.
11 Civ. 6181 (PAE), 2012 WL 2865474, at *6 (S.D.N.Y. July 12, 2012)
(dismissing Eighth Amendment claim where plaintiff failed to allege that the
defendant "actually disregarded any such known risks," but simply that the
defendant "'forgot to call,'" which fell "well short of the high threshold for
deliberate indifference"); *Bell*, 2013 WL 5863561, at *4-6 (same); *Baskerville* v.
*Blot*, 224 F. Supp. 2d 723, 735-36 (S.D.N.Y. 2002) (dismissing claim based on
prison nurse's "failure to obtain a refill of [plaintiff's] ... medication" where
plaintiff's "assertions [did] not show that [the nurse] acted intentionally to
withhold from him his prescribed medication or was in any way responsible for
the delay in obtaining a refill").

In short, Plaintiff has failed to plead deliberate indifference in connection
with the discontinuance of his medications, and Defendants' motion to dismiss
as to this claim must be granted.  The remaining issue, however, is whether
such dismissal should be with or without prejudice.  Here, too, the Court must

construe the record as broadly in favor of Plaintiff's claims as the facts will permit. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("'A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (internal citation omitted)). After reviewing the record, the Court concludes that more particularized pleading — specifically, if Plaintiff were able to allege more details concerning (a) whether he was diagnosed with MRSA prior to his incarceration; (b) whether he was in pain or exhibited symptoms of a MRSA infection at the time of his arrest; (c) whether Defendants were aware that Plaintiff had MRSA and had symptoms of MRSA at the time of his incarceration; and (d) whether Defendants ignored such symptoms or deliberately withheld medication — could cure the deficiencies in Plaintiff's Complaint. Accordingly, Defendants' motion to dismiss is granted without prejudice, and Plaintiff is granted leave to file an amended complaint. *See Gomez* v. *USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (granting leave to amend a *pro se* complaint where "a liberal reading of the complaint [indicates] that a valid claim might be stated'" (citation omitted)).[6]

---

[6]     Plaintiff does not allege whether the doctor's decision to discontinue his medication was the result of any official policy or practice, such that liability would attach for the County. Section 1983 "'extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Okin* v. *Village of Cornwall-on-Hudson Police Dep't.*, 577 F.3d 415, 439 (2d Cir. 2009) (internal citation omitted). Because the Court is permitting Plaintiff to amend his complaint with regard to his Eighth Amendment claim, and because Defendants failed to brief this issue or move upon this ground in

### iii.   The March 2013 MRSA Infection

Plaintiff also fails to plead sufficiently that Defendants acted with the requisite state of mind with respect to Plaintiff's March 2013 MRSA infection. Plaintiff avers that a large lump was present on his leg on or about March 17, 2013, and that Jail medical staff responded immediately by conducting a blood testing, placing Plaintiff in quarantine, and prescribing him antibiotics and pain medication. (Compl. 3). Critically, Plaintiff's only complaint with the treatment of his March infection is his belief that the doctors were "hiding something" from him. (*Id.*). This does not rise to the level of deliberate indifference, rather, Plaintiff's Complaint paints a picture of an attentive medical staff responding proactively to Plaintiff's infection.

As an initial matter, medical providers have wide discretion in treating inmate patients and their determinations "are given a 'presumption of correctness.'" *Sonds* v. *St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311-12 (S.D.N.Y. 2001) (internal citation omitted). Here, Plaintiff does not indicate that he was denied medically necessary treatment, or even that he disagrees with the medical treatment he received. Rather, Plaintiff simply alleges that he distrusts the doctors. It is well-settled that a mere disagreement between the inmate and doctor concerning the appropriate treatment or medication does not constitute deliberate indifference. *See Hill,*

---

their motion to dismiss, the Court declines to reach the issue of whether the Complaint adequately states a claim for municipal liability against the County.

657 F.3d at 123 (a "prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment" (internal citation omitted)); *Crique* v. *Magill*, No. 12 Civ. 3345 (PAC) (GWG), 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) ("The mere fact that an inmate feels that he did not receive adequate attention ... does not constitute deliberate indifference." (internal citation omitted)).  Simply put, a doctor's determination of the appropriate treatment is a medical judgment and does not in and of itself amount to deliberate indifference or a violation of the Eighth Amendment.

Plaintiff similarly does not allege any facts related to the rash he developed in June 2013 and, more specifically, whether it was related to his MRSA infection, much less does he plead facts indicative of deliberate indifference to his medical needs.  Plaintiff does not plausibly allege that Defendants acted with the requisite state of mind necessary to demonstrate deliberate indifference to a serious medical need.  Defendants' motion to dismiss as to this claim must also be granted.

Again, the Court must consider whether the dismissal should be with or without prejudice.  "Although pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile because the problem with the claim 'is substantive and better pleading will not cure it.'"  *Thomas* v. *Westchester Cnty.*, 12 Civ. 6718 (CS), 2013 WL 3357171, at *7 (S.D.N.Y. July 3, 2013) (quoting *Cuoco*, 222 F.3d at 112).  Plaintiff's allegations establish that Defendants responded

expeditiously and appropriately to his MRSA infection; additional allegations would not change this fact.  Plaintiff's claim in connection with his March 2013 MRSA infection is dismissed with prejudice.

### 3.    Plaintiff's State Law Claims Are Dismissed as to Defendant County

Plaintiff's allegations could also conceivably be construed as state-law tort claims for medical negligence.  However, Plaintiff indisputably did not comply with the requirements of Section 50-e of the New York General Municipal Law, and his state law claims brought against Defendant County must be dismissed for that reason.[7]

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims."  *Hardy* v. *N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (internal citations omitted).  Section 50-e "has been described by both the New York Court of Appeals and the Second Circuit as a 'condition precedent' as opposed to a 'statute of limitations.'"  *Nat'l Credit Union Admin. Bd.* v. *Morgan Stanley & Co., Inc.*, No. 13 Civ. 6705 (DLC), 2014 WL 241739, at *9 (S.D.N.Y. Jan. 22, 2014) (internal citations omitted).  "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed

---

[7]      N.Y. Gen. Mun. Law § 50-e states in relevant part:

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.

19

to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." *Dingle* v. *City of New York*, 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010) (internal citation omitted).  "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath* v. *Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (internal citation omitted).

The Westchester County Attorney rejected Plaintiff's Notice of Claim as untimely, and the Court is unable to excuse or overlook Plaintiff's failure to comply with Section 50-e.  Accordingly, Defendant County's motion to dismiss Plaintiff's New York State law claims is granted.[8]

---

[8]    Defendant Correct Care has not moved to dismiss the New York State law claims brought against it; accordingly, those remain.

## CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to terminate Docket Entry 13.

Specifically, Defendant County's motion is DENIED without prejudice with respect to the County's affirmative defense for failure to exhaust administrative remedies.

Defendant County's motion is GRANTED with prejudice with respect to Plaintiff's New York State law claims.

Defendants' motion is GRANTED with prejudice with respect to Plaintiff's Eighth Amendment claim relating to his March 2013 MRSA infection.

Defendants' motion is GRANTED without prejudice with respect to Plaintiff's Eighth Amendment claim relating to Defendants' decision to discontinue his medication in January 2013. Plaintiff is granted leave to file an amended complaint within 30 days from the date of this Order.

SO ORDERED.

Dated: April 25, 2014
New York, New York

KATHERINE POLK FAILLA
United States District Judge

A copy of this Order was mailed by Chambers to:

Darrell Washington
13-A-5530
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

21