UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DARRELL WASHINGTON,

                             Plaintiff,

              v.

WESTCHESTER COUNTY DEP'T OF
CORRECTION, *et al.*,

                         Defendants.

------------------------------------------------------------X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: January 30, 2015 |

13 Civ. 5322 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

In early 2013, Plaintiff Darrell Washington, who is proceeding *pro se* and is currently incarcerated, experienced complications from a severe bacterial infection while incarcerated at the Westchester County Jail. Plaintiff brought suit under 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. Plaintiff's Complaint was dismissed on April 24, 2014, for failure to state a claim. With the Court's leave to file a more particularized pleading, Plaintiff filed an Amended Complaint on May 26, 2014. Defendants now move to dismiss the Amended Complaint, again for failure to state a claim. For the reasons discussed herein, that motion is granted.

## BACKGROUND[1]

The Court assumes familiarity with the facts and procedural history set forth in its prior decision granting Defendants' motion to dismiss Plaintiff's Complaint, and granting Plaintiff leave to amend, *Washington* v. *Westchester County Dep't of Corr.*, No. 13 Civ. 5322 (KPF), 2014 WL 1778410 (S.D.N.Y. Apr. 25, 2014), as well as the Court's rulings therein.  For convenience, the particular facts relevant to this motion are set forth below.

### A.    Factual Background

Plaintiff was arrested on or about January 23, 2013.  (Am. Compl. 2). Prior to his arrest, Plaintiff had been prescribed a medication called Doxycycline, as well as an ointment called Bactroban.  (*Id.* at 3, 17; *see also* Pl.

---

[1]    The facts alleged herein are drawn from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #31)), and are assumed true for the purposes of this Opinion.  Citations to the Amended Complaint include the page-numbering convention provided by this Court's electronic case filing (or "ECF") system.  While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, given Plaintiff's *pro se* status, the Court will consider new factual allegations contained in Plaintiff's opposition.  *See generally Rodriguez* v. *Rodriguez*, No. 10 Civ. 891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (collecting cases); *Torrico* v. *Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002) (Lynch, J.) (noting that a court may consider factual allegations contained in a *pro se* litigant's opposition papers and other court filings).  In that same vein, the Court will consider facts from the Plaintiff's Complaint (Dkt. #2 ("Compl.")) that have not been repeated in the Amended Complaint. *See Little* v. *City of New York*, No. 13 Civ. 3813 (JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff thus appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint.  Because the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *see also Fleming* v. *City of New York*, No. 10 Civ. 3345 (AT), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Even though an amended complaint ordinarily supersedes the original and renders it of no legal effect, the Court considers facts from Plaintiff's original and amended complaints." (internal quotation marks omitted)); *Camarano* v. *City of New York*, 624 F. Supp. 1144, 1147-48 (S.D.N.Y. 1986) ("[A] *pro se* civil rights complaint[] should be … given the benefit of incorporation." (internal quotation marks and citation omitted)).

For convenience, Defendants' opening brief in support of the instant motion (Dkt. #36) will be referred to as "Def. Br."; Plaintiff's opposition (Dkt. #41) as "Pl. Opp."; and Defendants' reply brief (Dkt. #44) as "Def. Reply."

Opp., Ex. A at 1).  Plaintiff alleges that he was prescribed these medications "for treatment [of] the infectious disease MRSA." (Am. Compl. 3).[2]  In support of this allegation, Plaintiff has submitted a medical report dated January 4, 2013 — approximately 19 days prior to his arrest — from Hudson Valley Hospital ("Hudson Valley") in Cortland Manor, New York.  (*See* Pl. Opp., Ex. A). The treating physician indicated that Plaintiff complained of "pain, erythema[,] tenderness of both knees[,] and one spot on his abdomen," and reported that his symptoms began "with a rash on his back two months ago and … several, painful lesions in the interim." (*Id.* at 1).  The doctor's "clinical impression [wa]s MRSA cellulitis" and his diagnosis was "acute cellulitis." (*Id.*).  The doctor prescribed two medications: 20 tabs of Doxycycline (with instructions to take two tabs daily for 10 days) and Bactroban ointment (with instructions to "apply to affected area three times a day"). (*Id.*).

Beginning on January 24, 2013, Plaintiff was incarcerated at the Westchester County Jail (the "Jail"), in Valhalla, New York.  (Am. Compl. 17 (noting an "admit date" of January 24, 2013)).  The Jail is operated by Defendant Westchester County Department of Correction (the "County"). Defendant Correct Care Solutions, LLC ("Correct Care") provides medical care to prisoners at the Jail.  (*See generally* Am. Compl. 14-16, 19-24 (Correct Care forms from Plaintiff's records)).

---

[2]     MRSA is an acronym for Methicillin-resistant Staphylococcus aureus, a bacterium that can cause serious infections.  *See* Methicillin-Resistant Staphylococcus aureus (MRSA), National Institute of Allergy and Infectious Diseases, National Institutes of Health, http://www.niaid.nih.gov/topics/antimicrobialresistance/examples/mrsa/Pages/default.aspx (last visited Jan. 27, 2015).

When Plaintiff was processed for intake at the Jail, the Doxycycline and Bactroban were taken from him, along with his various other personal belongings.  (*See* Am. Compl. 17).  Plaintiff informed a correctional officer, an intake nurse (referred to in the Amended Complaint as "Jane Doe"), and a doctor on staff (referred to as "John Doe #1") that Plaintiff was on medication for MRSA.  (Compl. 3; *see* Am. Compl. 3 ("[H]e informed staff of his infectious disease."); *id.* at 15 [staff referral form noting that Plaintiff had a "Hx [history of] Doxycycline"); Pl. Opp. 2 ("The intake nurse is Jane Doe[.]  John Doe #1 [is] Corrections Care Doctor [who] denied Plaintiff his medication[.]")).[3]  The doctor informed Plaintiff that he could no longer take the medications he had brought with him, but that Plaintiff would be prescribed new medications.  (*See* Am. Compl. 3; Pl. Opp. 2).  No such medication was prescribed for Plaintiff's first two months at the Jail.  (Am. Compl. 3).

On or about March 17, 2013, Plaintiff developed a large abscess on his leg.  (*See* Am. Compl. 3, 9, 20).  The abscess was "very painful."  (*Id.* at 3).  In response to Plaintiff's complaint, a doctor performed a blood test, measured the size of the wound, and placed Plaintiff in quarantine for approximately one week.  (Compl. 3; Am. Compl. 3).  The diagnostic test results subsequently revealed that Plaintiff was infected with MRSA.  (Am. Compl. 3).  Accordingly, a doctor prescribed antibiotics and painkillers to Plaintiff, which he took for approximately three weeks.  (Compl. 3).  Although he was eventually treated for

---

[3]     Although Plaintiff's opposition brief clarifies the involvement of Jane Doe and John Doe #1, it does not with respect to the defendant named as "John Doe #2."  (*See* Pl. Opp. 2; *see also* Def. Br. 5-6 (discussing individual defendants and lack of alleged involvement)).

the infection, Plaintiff alleges he experienced "pain and suffering for at least 30 days." (Am. Compl. 3).

### B.    Procedural Background

On July 29, 2013, Plaintiff initiated the instant action against Defendants (Dkt. #2), seeking $1 million in damages to "pay for any further medical bills and also for pain and suffering" (*id.* at 5). Defendants moved to dismiss the Complaint, and on April 24, 2014, the Court granted Defendants' motion. *Washington*, 2014 WL 1778410, at *1.

The Court began by denying, without prejudice, Defendants' motion to dismiss on the grounds that Plaintiff had failed to exhaust his administrative remedies, finding that this claim was an affirmative defense as to which discovery was needed. *Washington*, 2014 WL 1778410, at *5. The Court then proceeded to address Plaintiff's deliberate indifference claim by breaking it down into two time periods. The Court dismissed, with prejudice, Plaintiff's claim for deliberate indifference regarding the medical treatment he received on or about March 17, 2013, after concluding that "Plaintiff's allegations establish that Defendants responded expeditiously and appropriately to his MRSA infection; [and] additional allegations would not change this fact." *Id.* at *8. However, upon consideration of Plaintiff's *pro se* status, the Court granted Plaintiff leave to file an Amended Complaint with respect to his claim for deliberate indifference to his serious medical needs upon intake in January 2013. *Id.* at *7.

The Court cautioned Plaintiff that only a more particularized pleading could cure the deficiencies in his Complaint. *See Washington*, 2014 WL 1778410, at *7. Specifically, the Court informed Plaintiff that an amended complaint capable of surviving a motion to dismiss would require

> more details concerning (a) whether he was diagnosed with MRSA prior to his incarceration; (b) whether he was in pain or exhibited symptoms of a MRSA infection at the time of his arrest; (c) whether Defendants were aware that Plaintiff had MRSA and had symptoms of MRSA at the time of his incarceration; and (d) whether Defendants ignored such symptoms or deliberately withheld medication[.]

*Id.*[4] Finally, the Court dismissed Plaintiff's state-law claims of negligence against the County, citing Plaintiff's failure to comply with the notice of claim requirements of Section 50-e of the New York General Municipal Law. *Id.* at *9.

Plaintiff filed his Amended Complaint on May 26, 2014. (Dkt. #31). The complaint began with several factual averments designed to respond to Defendants' failure to exhaust arguments. (*Id.* at 1-2, 9-11). Plaintiff then proceeded to allege facts concerning his pre-incarceration diagnosis with MRSA, his check-in at the Jail and concomitant surrender of medication, the Jail's failure to prescribe replacement medications for him, and his subsequent development of a wound in his leg. (*Id.* at 2-4, 9-11). Finally, Plaintiff attached

---

[4]    In this regard, the Court noted that Plaintiff had not appeared to allege an official policy or practice to discontinue his medication, as would have been required before municipal liability could attach. *See Washington*, 2014 WL 1778410, at *7 n.6; *see generally Monell* v. *Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). However, the Court did not resolve the issue at that time, noting its decision to allow Plaintiff to replead his Complaint and Defendants' failure to make such an argument in their motion papers. *See Washington*, 2014 WL 1778410, at *7 n.6.

6

various administrative and medical records relating to his incarceration at the
Jail as exhibits (*id.* at 5, 14-24), including a medical release form and an
invoice of his personal property.[5]

Pursuant to the briefing schedule set by the Court (Dkt. #33),
Defendants moved to dismiss on June 27, 2014 (Dkt. #34). Plaintiff filed his
opposition on August 6, 2014 (Dkt. #41), and the motion was fully briefed as of
the filing of Defendants' reply on August 28, 2014 (Dkt. #44).

In their motion papers, Defendants argue that the Amended Complaint
should be dismissed (i) as to the individual defendants, because Plaintiff failed
to allege their personal involvement in the alleged violation of his constitutional
rights (Def. Br. 4-6); (ii) as to the County and Correct Care, because Plaintiff
failed to allege an unconstitutional policy or practice (*id.* at 6-7); and (iii) on the
merits, because Plaintiff failed to allege a viable claim for deliberate indifference
(*id.* at 7-13). In his opposition, Plaintiff clarifies that the Jane and John Doe
defendants were the intake nurse at the Jail and the doctor who denied and/or
failed to replace his medication. (Pl. Opp. 1-2). In addition, Plaintiff includes a
printout of the treating physician's notes from his January 4, 2013
examination at Hudson Valley, including the clinical impression that Plaintiff
was suffering from MRSA cellulitis. (Pl. Opp., Ex. A).

---

[5]    Plaintiff had submitted these documents to the Court prior to the Defendants' first
       motion to dismiss. The Court rejected this attempt, noting that the documents were not
       submitted with the Complaint, referred to in that document, or submitted in connection
       with the briefing on the motion to dismiss. *See Washington*, 2014 WL 1778410, at *1
       n.2.

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering such a motion, a court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).

A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 569 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable LLC*, 622

F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).  That said, the liberal pleading standard accorded to *pro se* litigants "is not without limits, and all normal rules of pleading are not absolutely suspended."  *Stinson* v. *Sheriff's Dep't*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

## 2.    Section 1983 Claims Generally

Plaintiff brings this claim under Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992).  As such, a "[Section] 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the

plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

As a prerequisite to an award of damages under Section 1983, a plaintiff must show the personal involvement of defendants in the alleged constitutional deprivations. *See Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir. 2006). To show personal involvement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

A court may consider supervisory personnel "personally involved" if a plaintiff plausibly alleges facts showing that those defendants: (i) participated directly in the alleged constitutional violation; (ii) failed to remedy the wrong after being informed of it; (iii) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts. *Grullon* v. *City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon* v. *Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[6]

---

[6]     Courts have disagreed as to whether the five *Colon* factors continue to apply after *Iqbal.*
*See Landron* v. *City of New York*, No. 14 Civ. 1046 (NRB), 2014 WL 6433313, at *4 n.1
(S.D.N.Y. Nov. 7, 2014) (collecting cases); *Vogelfang* v. *Capra*, 889 F. Supp. 2d 489, 502

Municipal entities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983, *Monell*, 436 U.S. at 690, but cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*, *Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986).  In other words, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694).  A plaintiff may establish municipal liability under *Monell* in several ways, including by presenting evidence of

> [i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or [iv] a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting *Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)).

---

(S.D.N.Y. 2012) (same); *see also Raspardo* v. *Carlone*, 770 F.3d 97, 116-17 (2d Cir. 2014) (declining to decide the degree to which *Colon* survives *Iqbal*).  Any such uncertainty, however, does not alter settled law that "[t]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under [Section] 1983."  *Styles* v. *Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summary order) (collecting cases).

### 3.    Section 1983 Claims for Deliberate Indifference

To plead a violation of the Eighth Amendment for deliberate indifference to a serious medical need, a plaintiff must allege facts that satisfy (i) an objective requirement that the alleged deprivation results in a serious medical condition and (ii) a subjective requirement that the defendant, in depriving the plaintiff of medical treatment, acted with deliberate indifference. *Caiozzo* v. *Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

With respect to the subjective component, a plaintiff must allege that the defendant acted with "a sufficiently culpable state of mind," equivalent to criminal recklessness. *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal citation omitted). Such a state of mind "entails something more than mere negligence[, but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway*, 99 F.3d at 553 (quoting *Farmer* v. *Brennan,* 511 U.S. 825, 835 (1994)) (internal quotation marks omitted).

Mere allegations of negligence will generally be insufficient to state a claim of deliberate indifference to a serious medical need. *Estelle* v. *Gamble*, 429 U.S. 97, 105-06 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Rather, a plaintiff must allege that 'the charged official ... act[ed] or fail[ed] to act while *actually aware* of a substantial risk that serious inmate harm will

12

result." *Bell* v. *Jendell*, No. 12 Civ. 6666 (KMK), 2013 WL 5863561, at *4 (S.D.N.Y. Oct. 31, 2013) (quoting *Salahuddin* v. *Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in *Bell*); *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Accordingly, "not every lapse in medical care is a constitutional wrong." *Salahuddin*, 467 F.3d at 279 (internal citation omitted).  A constitutional wrong requires deliberate indifference, and it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.  *See Ross* v. *Correct Care Solutions LLC*, No. 11 Civ. 8542 (DLC), 2013 WL 5018838, at *4 (S.D.N.Y. Sept. 13, 2013) ("[M]ere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (internal quotation marks and citation omitted)).

## B.   Analysis

### 1.   The Section 1983 Claim Is Dismissed as to the Individual Defendants

Defendants correctly note that Plaintiff fails to allege any conduct on the part of the individual defendants in the Amended Complaint, and, further, that such conduct is necessary to sustain a Section 1983 against each of those defendants.  (Def. Br. 4-6).  In response, Plaintiff explains that the Jane and

John Doe Defendants are medical personnel at the Jail whose conduct led to exacerbation of an existing MRSA infection and a consequent open wound in his leg.  (*See* Pl. Opp. 2).  The Court will permit Plaintiff to clarify his Amended Complaint through his opposition papers, and will consider the allegations of personal involvement as to these two defendants to be sufficient.  *See supra*, n.1.  Plaintiff fails to offer similar clarification with respect to Defendants John Doe #2 and Kevin Cheverko, the latter of whom is the Westchester County Correction Commissioner and a person almost certainly *not* involved in the provision of medical treatment to inmates at the Jail.  Because Plaintiff has failed to identify any conduct on the part of either of these two defendants, and because in particular Plaintiff has failed to allege any facts that would render Defendant Cheverko liable under *Grullon*, the Court will dismiss the Section 1983 claim against these two defendants.

Ordinarily, in a situation in which a plaintiff identifies putative defendants by position rather than name, the Court would issue an order pursuant to *Valentin* v. *Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the County and Correct Care to assist in identifying the unknown defendants, with the expectation that Plaintiff would then amend his complaint to include the names of those defendants.  If, however, Plaintiff's allegations were insufficient to establish a viable Section 1983 claim, it would be futile to permit amendment of the complaint for this purpose (and, by extension, to issue a *Valentin* order).  *Cf. Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that district courts should not dismiss a *pro se* complaint without granting

14

leave to amend unless amendment would be futile).  In consequence, the Court will consider the merits of Plaintiff's claims before deciding whether a *Valentin* order is appropriate.

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants acted with deliberate indifference to his serious medical needs.  His claim is limited by the Court's prior ruling to Defendants' decision to discontinue Plaintiff's medications upon his admission into the Jail in January 2013.  *See Washington*, 2014 WL 1778410, at *8 ("Plaintiff's claim in connection with his March 2013 MRSA infection is dismissed with prejudice.").  Also in its prior decision, the Court found that the objective, "serious medical condition" element of the Eighth Amendment analysis was satisfied, *Id.* at *5 ("Plaintiff has satisfied the first element of his Eighth Amendment claim.").  The Court must now determine whether Plaintiff has adequately alleged the second, subjective element of his Eighth Amendment claim.

As noted, the subjective component of the deliberate indifference standard requires plausible allegations that "the official charged with deliberate indifference [had] act[ed] with a 'sufficiently culpable state of mind'[;] … the official must "'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hill* v. *Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Wilson* v. *Seiter*, 501 U.S. 294, 298 (1991); *Farmer*, 511 U.S. at 837). When alleging medical malpractice, a complaint does not state a claim unless the

15

alleged "malpractice involves culpable recklessness — 'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Id.* at 123 (quoting *Chance* v. *Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

The Court afforded Plaintiff, who is proceeding *pro se*, an opportunity to cure deficiencies identified in his Section 1983 claim, and even provided guidance to him in that regard. Yet Plaintiff's allegations regarding the subjective component of his deliberate indifference claim are largely indistinguishable from those alleged previously in the Complaint. As before, Plaintiff contends that he should have been allowed to continue taking his medication or that he should have been prescribed new medication for treatment of MRSA long before his condition deteriorated and he received treatment in March. And Plaintiff's claim still hinges on the allegation that he had been prescribed medication for MRSA at the time of his arrest, but that Defendants discontinued those medications and failed to prescribe him new ones, despite their promise to do so. (*See* Compl. 3; Am. Compl. 3; Pl. Opp. 2).

Plaintiff has made two significant additions to the pleadings — the first of which is contained in Plaintiff's opposition to the instant motion and aids his cause, and the second of which is contained in the Amended Complaint and makes clear the propriety of Defendants' motion. First, when his pleadings are liberally construed to include his opposition submission, Plaintiff now adequately alleges that he had been diagnosed (at least preliminarily) with

16

MRSA at Hudson Valley prior to his incarceration.  (*See* Pl. Opp., Ex. A at 1).[7]
Coupled with his allegations that he told one or more medical professionals at
the Jail of this diagnosis, and informed them of the medications that had been
prescribed (*see* Am. Compl. 15), Plaintiff could argue that the failure to provide
him with replacement medication in January 2013 evidenced a culpably
reckless decision to terminate a course of treatment.

The Court is mindful of the competing concerns brought to bear by the
Amended Complaint.  On the one hand, the Court is loath to transmogrify
routine medical malpractice claims into constitutional violations, simply
because they involve an incarcerated plaintiff.  On the other, the Court
recognizes the possibility that certain medical conditions may be so life-
threatening that advising prison personnel of a diagnosis of that condition and
providing corroborative prescriptions may, particularly at the pleading stage, be
sufficient to state a claim of culpable recklessness if prison officials later fail to
act on that knowledge.  As it happens, however, what is — and what is not —
in the Amended Complaint makes clear that Plaintiff has failed to allege
adequately the subjective element of a deliberate indifference claim.

Critically, despite specifically being asked to do so, Plaintiff failed
to provide the Court with "more details regarding": (i) "whether he was in pain
or exhibited symptoms" in January 2013; (ii) "whether Defendants were aware

---

[7]     The Court appreciates the distinction Defendants draw between a clinical impression
and a diagnosis of MRSA.  (Def. Reply 2 ("While the clinical impression of 'MRSA' was
noted, there were no tests or cultures ordered to confirm its existence.")).  However,
construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff
has adequately alleged that he had MRSA at the time of his incarceration.

that Plaintiff ... had symptoms of MRSA at the time of his incarceration"; and

(iii) "whether Defendants ignored such symptoms or deliberately withheld

medication." *Washington,* 2014 WL 1778410, at *7.  For example, Plaintiff does

not allege that medical professionals at the Jail had access to or knowledge of

the Hudson Valley medical report, or that he was exhibiting symptoms or

suffering from pain during his January 2013 medical exam, or that the failure

to prescribe replacement medication for him reflected anything more than

oversight.  *Cf. Erickson* v. *Pardus,* 551 U.S. 89, 91 (2007) (finding sufficient the

allegation that doctors terminated prisoner's Hepatitis C treatment because

they suspected him of using illicit drugs).[8]  Without including details such as

these, the Court is left with no facts that suggest Defendants acted with the

requisite culpable state of mind.  *See Baskerville* v. *Blot,* 224 F. Supp. 2d 723,

735-36 (S.D.N.Y. 2002) ("[B]ecause [plaintiff's] assertions do not show that

---

[8]   Plaintiff argues that "[D]efendants acted with deliberate indifference by refusing to
provide the required medical care attention that caused him substantial pain and
suffering[,] ... knowing that MRSA is responsible for thousands of deaths." (Pl. Opp. 2).
Plaintiff cites *Accolla* v. *U.S. Gov't,* 636 F. Supp. 2d 304 (S.D.N.Y. 2009), to support this
argument, presumably because *Accolla* also involved an inmate who had contracted
MRSA.  However, the district court in *Accolla* did not reach the issue of whether medical
staff acted with deliberate indifference because the Court found the inmate's claims to
be procedurally barred.  *Id.* at 309; *see also Accolla* v. *U.S. Gov't,* 668 F. Supp. 2d 571,
573 (S.D.N.Y. 2009), *aff'd,* 381 F. App'x 71 (2d Cir. 2010) (summary order).  In any
event, the facts of *Accolla* are otherwise distinguishable because the defendants in
*Accolla* allegedly "failed to recognize or treat [plaintiff's] MRSA" where plaintiff exhibited
symptoms such as "a fungal bacterial infection to his right leg and foot," "another
fungal bacterial infection in his left foot," and "dizziness and vomiting."  *Accolla,* 636 F.
Supp. 2d at 305.  Here, Plaintiff does not allege that he was exhibiting any symptoms or
experiencing pain during his January 2013 intake examination with prison medical
staff.  The Court also notes that a February 2013 "Health Service Request" filled out by
Plaintiff complains only of "nasal congestion/chest congestion." (Am. Compl. 19).  As
noted above, when Plaintiff first mentioned symptoms or pain related to his MRSA
infection in March 2013, he was treated by the medical staff with medication.  (*See id.*
at 20).  *See also Washington,* 2014 WL 1778410, at *8.

[defendant] acted intentionally to withhold from him his prescribed medication ... he has failed to state an Eighth Amendment claim of deliberate indifference to a serious medical need."); *cf. Chance*, 143 F.3d at 704 ("Crucially, [plaintiff] has also alleged that [the doctors] recommended extraction not on the basis of their medical views, but because of monetary incentives. This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment.").

What Plaintiff *does* include with his Amended Complaint further undercuts his claim of deliberate indifference. Specifically, by incorporating a medical verification and release form (Am. Compl. 16), Plaintiff has alleged the very opposite of conscious disregard or culpable recklessness: the Jail attempted to verify his known prescriptions and was unable to verify a prescription for Doxycycline or Bactroban. (*See* Def. Br. 10 (citing Am. Compl. 16 (verifying only a prescription for Tylenol with Codeine))). This document is of a piece with Plaintiff's prior allegations, detailed in the Court's prior Opinion, the he was seen promptly by medical staff once he became symptomatic. *See Washington*, 2014 WL 1778410, at *8; *see also Vail* v. *City of New York*, No. 12 Civ. 6125 (KMK), — F. Supp. 3d —, 2014 WL 6772264, at *10-11 (S.D.N.Y. Dec. 2, 2014) (collecting cases for proposition that prompt and adequate medical care after onset of symptoms can vitiate finding of culpable recklessness).

Construed liberally, Plaintiff's allegations are that: (i) he was diagnosed with a MRSA infection prior to his January 2013 incarceration; (ii) he was prescribed medication in connection with that diagnosis; (iii) he was required to relinquish this medication upon his surrender to the Jail, though he was promised replacement medication; (iv) he completed a release form to allow medical personnel at the Jail to verify his medications; (v) medical personnel could not verify the medications he had supposedly been prescribed for the MRSA; (vi) he did not receive replacement medications until after he became symptomatic, at which point he was promptly quarantined and treated for the MRSA infection.  Bereft of any allegations of ulterior motive or culpable recklessness, the Amended Complaint asks the Court to examine the reasonableness *per se* of the doctor's decision to suspend Plaintiff's medication. This analysis would necessarily require a detour from what is cognizable under Section 1983 into what is squarely within the purview of a negligence or medical malpractice claim.  *See Santana* v. *Watson*, No. 13 Civ. 1549 (SAS), 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014) ("[D]eliberate indifference is more substantial than mere disagreement over a course of treatment, negligence or even medical malpractice."); *id.* at *6 (dismissing complaint at summary judgment stage where, "[a]t most, the[] facts show that [the nurse] knew [plaintiff] had a prescription ... and failed to follow up on his [prescription] request in a timely manner," but "[t]here [wa]s no indication that she deliberately denied access ..., or that she knew that the failure to provide [treatment] posed an excessive risk to [plaintiff's] health or safety.").  As the

Court recognized in connection with the prior motion to dismiss, these facts are insufficient to state a claim for deliberate indifference. *Washington*, 2014 WL 1778410, at *7 (citing cases). The Court finds that it would be futile to issue a *Valentin* order, because even if Plaintiff were able specifically to identify John Doe #1 and Jane Doe, he cannot plead a viable federal claim as to either defendant. Accordingly, the Court dismisses the Section 1983 claim as to all of the individual defendants.

### 2. The Section 1983 Claim Is Dismissed as to the County and Correct Care[9]

Turning now to the entity defendants, the County and Correct Care, the Court begins by noting that they are viewed similarly for Section 1983 purposes. The County is, self-evidently, a municipal entity, and thus a "state actor." On these facts, Correct Care is a state actor, too, inasmuch as it has assumed responsibility for providing medical care to individuals detained by the County. *See Rembert* v. *Cheverko*, No. 12 Civ. 9196 (KBF), 2014 WL 3384629, at *4 n.8 (S.D.N.Y. July 10, 2014) (deciding issue as to Correct Care; collecting cases); *see generally West* v. *Atkins*, 487 U.S. 42, 52 n.10, 57 (1988) (concluding that private physician hired by North Carolina to provide medical care to prisoners was "state actor" because he had been hired to fulfill the

---

[9] Several of the documents aggregated as Plaintiff's Amended Complaint do not list Correct Care as a defendant. However, because Plaintiff named Correct Care in the Complaint (Dkt. #2 at 1); because Correct Care is named in certain captions (Dkt. #31 at 7); and because his allegations seem to pertain to Correct Care employees, the Court will consider Correct Care to be a defendant in the case.

21

state's constitutional obligation to attend to the necessary medical care of prison inmates).

Plaintiff's potential claims against the County and Correct Care presuppose the existence of an independent constitutional violation; because this Court has found that none has been identified, Plaintiff's *Monell* claims must be dismissed as to them.   *See, e.g.*, *Mitchell* v. *County of Nassau*, 786 F. Supp. 2d 545, 563 (E.D.N.Y. 2011) ("In order to state a viable *Monell* claim … plaintiff must establish some constitutional violation." (collecting cases)). However, even had Plaintiff alleged a viable claim for deliberate indifference as to any of the individual defendants, he has failed to allege any facts that would support a *Monell* policy or practice claim against either entity, necessitating dismissal on this independent basis as well.   *See Kampfer* v. *County of Fulton*, 107 F.3d 3, 1997 WL 48990, at *2 (2d Cir. 1997) (unpublished table decision) ("Having been granted a second opportunity to correct the defects in his complaint, [plaintiff] filed an amended complaint that suffers from at least as many difficulties as the original complaint.  He again fails to … allege any basis for avoiding the barrier[] of … *Monell*."); *see also Mostafa* v. *City of New York*, No. 13 Civ. 155 (PAE), 2014 WL 4792066, at *2 (S.D.N.Y. Sept. 25, 2014) (dismissing *Monell* claim with prejudice where plaintiff's amended complaint did not "attempt to … satisfy the requirements of *Monell* so as to state a claim against the City").

### 3.    The Section 1983 Claim Is Dismissed With Prejudice

The remaining issue is whether the dismissal of Plaintiff's Section 1983 claim should be with or without prejudice.  Here, too, the Court must construe the record as broadly in favor of Plaintiff's claims as the facts will permit.  *See Cuoco*, 222 F.3d at 112 ("'A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (internal citation omitted)).  As Plaintiff has already been afforded a chance to cure deficiencies, along with a roadmap outlining that cure, and has still failed to do so, the Court will not grant him further leave to amend.  *See, e.g.*, *Sanchez* v. *Blustein, Shapiro, Rich & Barone LLP*, No. 13 Civ. 8886 (CS), 2014 WL 7339193, at *9 (S.D.N.Y. Dec. 23, 2014) ("[*Pro se*] Plaintiff's failure to fix deficiencies in his previous pleadings, after being provided notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*.").

Moreover, after reviewing the record, the Court concludes that a more particularized pleading will not cure the deficiencies identified herein and in the Court's April 24, 2014 Opinion.  Even construed broadly, the facts as alleged fail to suggest the culpable state of mind required to plead a claim for deliberate indifference.  *Cuoco*, 222 F.3d at 112 ("[W]e do not find that the complaint suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to

reframe[.]").  Accordingly, Plaintiff's remaining Section 1983 claim is dismissed with prejudice.

### 4. The Court Declines Supplemental Jurisdiction over Plaintiff's State-Law Claims

Finally, to the extent that the Amended Complaint alleges state-law torts (such as medical malpractice) against Correct Care and the individual defendants, the Court dismisses those claims without prejudice to their refiling.  The Court previously dismissed Plaintiff's state-law claims against Defendant County for failure comply with the requirements of Section 50-e of the New York General Municipal Law.  *See Washington*, 2014 WL 1778410, at *9.[10]  Having now dismissed the federal claim, the Court exercises its discretion under 28 U.S.C. § 1367 to decline jurisdiction over Plaintiff's remaining state-law claims.  *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan* v. *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." (citation omitted)).  These claims are dismissed without prejudice to their potential refiling in state court.

---

[10]     N.Y. Gen. Mun. Law § 50-e states in relevant part:

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety.  Plaintiff's Section 1983 claim is DISMISSED with prejudice.  His state-law claims against the individual defendants and Correct Care are DISMISSED without prejudice.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      January 30, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Opinion and Order was mailed by Chambers to:*

Darrell Washington
13-A-5530
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403